**James WOODS, Jr., Appellant,**

**v.**

**Homer MILLS and the Clay County Election Commission, etc., Appellees.**

Court of Appeals of Kentucky.

Jan. 4, 1974.

B. Robert Stivers, London, for appellant.

Roy W. House, John M. Lyttle, J. D. White, Manchester, for appellees.

CATINNA, Commissioner.

James Woods, Jr., was the Democratic candidate and Homer Mills was the Republican candidate for the office of Sheriff of Clay County, Kentucky, in the November 6, 1973, General Election. Homer Mills was victorious and was so certified by the County Election Commission.

Woods subsequently filed an election contest in which it was alleged Homer Mills, having been convicted of a felony, was not a legal voter of Clay County, Kentucky, and consequently was not an eligible candidate for the office of sheriff and finally he was ineligible to hold the office to which he had been elected.

All the facts were stipulated which included the following:

1. The grand jury of Clay County, Kentucky, indicted Homer Mills on the felony charge of child desertion.

2. Subsequent to the indictment Mills was tried before a Clay County Petit Jury and convicted of the crime as charged and his punishment fixed at three years in the state reformatory.

3. Upon Mills' motion, pronouncement of the judgment in conformity with the verdict of the jury was suspended by the court, and he was placed on probation.

4. No pardon by the Governor of the Commonwealth of Kentucky was ever given to Homer Mills nor his rights of citizenship restored.

Mills' entire defense to the charges rests upon his claim that he had not been convicted of a felony for the reason that judgment upon the verdict of guilty had been suspended, and he had been placed on probation.

The trial court dismissed Woods' complaint and adjudged that Mills was legally elected to the office of sheriff of Clay County, Kentucky, at the regular election on November 6, 1973, and was entitled to qualify and take office on or before the first Monday in January 1974—January 7, 1974.

Two questions were presented to this court for consideration: First, had Mills been convicted of a felony, thereby disqualifying him as a candidate and rendering him ineligible to hold the office of sheriff? Secondly, if Mills was disqualified, did Woods succeed to the office of sheriff, or was there no election?

■ Upon the question of whether Mills had been convicted of a felony, this court is of the opinion that the verdict of the jury finding Mills guilty of child desertion and fixing his punishment at three years in the state reformatory is sufficient to sustain the claim that he had been so convicted. It is true that no judgment had been entered; however, the suspension of the entry of judgment and the placing of Mills upon probation were upon his own motion. By making this motion he accepted the verdict of the jury as being correct and therefore acknowledged his conviction of a felony. There may be instances where conviction would not be complete without the entry of a judgment; however, this court has not constituted entry of a judgment to be an essential part of "conviction." One convicted of perjury is not permitted to testify as a witness after such a conviction. In that instance, we have held that for the purpose of testing the witness' qualifications the jury verdict of guilty is sufficient even though entry of the judgment was suspended and the perjurer placed on probation. Jackson v. Commonwealth, Ky., 249 S.W.2d 20 (1952). Under our Habitual Criminal Act we have consistently held that a conviction for the purpose of this act flows from either a verdict or a plea of guilty, and the fact that the judgment was suspended and the person placed on probation does not remove the fact that he had been convicted. In Winn v. Commonwealth, Ky., 303 S.W.2d 275 (1957), we said:

"There is no merit in appellant's argument that one of his previous felony convictions in Indiana was suspended, therefore it did not amount to a conviction. The obvious answer to this argument is there could have been no suspension of the sentence had there not been a previous conviction. Our habitual criminal statute, KRS 431.190, deals with convictions of second and third offenses and not with whether sentences imposed thereon are served, suspended or probated. We accept as sound the reasoning in People v. Funk, 321 Mich. 617, 33 N.W. 2d 95, 97, 5 A.L.R.2d 1077, where it was written, 'The act (habitual criminal act) is concerned with prior convictions and not the sentences under those convictions.' See Jackson v. Com., Ky., 249 S.

W.2d 20, and Green v. Com., Ky., 281 S.W.2d 637, which support our reasoning in the instant case. We are not inclined to follow People v. Schaller, 224 App. Div. 3, 229 N.Y.S. 492, holding 'conviction' as used in the New York statute implies final judgment or sentence by the court and that increased punishment cannot be inflicted unless the sentence imposed by the original judgment is served. Neal v. Com., 221 Ky. 239, 298 S.W. 704, and City of Pineville v. Collett, 294 Ky. 853, 172 S.W.2d 640, relied upon by appellant, are not in point. They correctly hold that a conviction is not final in case of an appeal until after the appellate court has affirmed the judgment."

See also Commonwealth v. Reynolds, Ky., 365 S.W.2d 853 (1963).

■ Mills' felony conviction rendered him ineligible to either be a candidate for the office of sheriff or to hold the office of sheriff of Clay County, if elected. Section 150 of our Constitution provides in part:

"All persons shall be excluded from office who have been, or shall hereafter be, convicted of a felony, or of such high misdemeanor as may be prescribed by law, but such disability may be removed by pardon of the Governor."

Section 145 of the Constitution provides who shall be entitled to vote but excludes from this privilege as follows:

" * * * the following persons are excepted and shall not have the right to vote.

"1. Persons convicted in any court of competent jurisdiction of treason, or felony, or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage, but persons hereby excluded may be restored to their civil rights by executive pardon."

KRS 119.055 provides that in order for one to become a candidate in an election and get his name on the primary ballot he must be a person who is qualified to vote in any primary election and must be eligible for the office which he seeks.

Mills' prior felony conviction placed him without the pale of the statute and within the direct prohibition of the constitution; therefore, he was neither eligible to be a candidate nor is he now eligible to hold the office of sheriff of Clay County.

This brings us to the final question—if Mills cannot hold office, then in what posture do we find Woods and the election of November 6, 1973?

James Woods, Jr., did not receive a majority of the votes cast in the election of November 6, 1973, for the sheriff of Clay County. The fact that Mills is disqualified does not change this situation, and Woods cannot be declared the winner and succeed to the rights of the office.

■ Woods claims that because Mills was not qualified he was on the ballot illegally, and all votes cast for him were consequently illegal and should be discounted in reaching the total votes cast in the race. Although we have held that illegal votes may be subtracted from the total votes received by a candidate we have never gone so far as to hold that votes cast for an illegal candidate are in themselves illegal, but, on the contrary, we have held that such votes are legal.

Bogie v. Hill, 286 Ky. 732, 151 S.W.2d 765 (1941), disposes of any and all doubt in regard to Woods' right to succeed to the office. In this case the court had ruled that Bogie was not properly on the ballot and consequently the runner-up, Hill, was the winner of the election. In holding this not to be the law, we said:

"We now approach the question of whether or not the chancellor correctly adjudged Hill to have been elected after holding Bogie was not properly on the

ballot. Bogie contends that under § 6 of the Kentucky Constitution, 'all elections shall be free and equal', as construed in McKinney v. Barker, 180 Ky. 526, 203 S.W. 303, L.R.A.1918E, 581, Hill should not have been declared elected since he had not received a majority of the votes cast. That case holds that where a successful candidate in a primary has violated the Corrupt Practices Act, the candidate having the next highest number of votes receives the nomination; but that in a general election no candidate who has not received a majority of the votes where there are two candidates (or a plurality where there are more than two) is entitled to the office, although the candidate receiving the majority, or plurality, of the legal votes is for any reason disqualified or declared ineligible.

"McKinney v. Barker, supra, expressly recited it did not overrule King v. McMahan, 179 Ky. 536, 200 S.W. 956, which latter case is to the effect that when a candidate is not legally on the ballot he cannot receive any legal votes and his opponent, who is legally on the ballot, although receiving a lesser number of votes, is elected because the latter receives all the legal votes cast. King v. McMahan, supra, is unsound in that it holds that the votes cast for a candidate not entitled to be on the ballot are void or illegal votes. Certainly, there is nothing void or illegal about such votes—the invalidity is with the candidate for whom they are cast. McKinney v. Barker, supra (180 Ky. 526, 203 S.W. 305, L.R.A.1918E, 581) quotes from Sublett v. Bedwell, 47 Miss. 266, 12 Am.Rep. 338: 'Without going into the general reasoning, the great weight of American authority, and, as we think, upon the soundest consideration, is, that although the majority vote for a disqualified person, the votes so cast are not illegal, and therefore to be treated as naught; but the result is, if the ineligible candidate cannot take the office, the electors have

failed to make a choice. In truth, there has been no election at all, and the minority candidate has no right to the office.'

"King v. McMahan, supra, is overruled insofar as it holds the votes cast for a candidate not entitled to receive them are illegal and that a candidate in a general election receiving less than a majority, or plurality, of the legal votes cast is entitled to the office. Some of our opinions have followed King v. McMahan on this point, two of the most recent being Ison v. Weddle, 226 Ky. 201, 10 S.W.2d 814, and Allen v. Hardin, 272 Ky. 396, 114 S.W.2d 494, which cases are likewise overruled insofar as they conflict with what is said herein. McKinney v. Barker, supra, has been generally followed and it is only in rare instances there has been any departure therefrom. Based on the authority of McKinney v. Barker, supra, and cases prior and subsequent thereto, the correct rule was clearly stated in Morgan v. Adams, 250 Ky. 441, 63 S.W.2d 479, 480: 'It is a well settled rule that one receiving less than a plurality of legal votes cannot be declared elected, and the only exception to this rule is where a successful candidate has violated the Corrupt Practice Act (Ky.Stats. § 1565b–1 et seq.) in a primary election. This exception cannot be applied in a general election. The candidate for an office who has not received a plurality of the legal votes cast is not entitled to the office, although the candidate who received a plurality of the legal votes is, for any reason, ineligible.' "

■ Homer Mills was an ineligible candidate and is ineligible to hold the office to which he was elected; James Woods, Jr., did not receive a majority of the votes cast in the election. Therefore, he cannot succeed to the office of sheriff of Clay County, Kentucky. For this reason we hold that the November 6, 1973, general election held in Clay County, Kentucky, for the of-

fice of sheriff of said county, was void and the office of sheriff of Clay County vacant.

The right to question the qualifications of a candidate in an election contest was not raised either in the trial court or in this court. On this issue see, however: Wilson v. Tye, 122 Ky. 508, 92 S.W. 295 (1906); Wilson v. Tye, 126 Ky. 34, 102 S. W. 856 (1907); and Hart v. Rose, 255 Ky. 576, 75 S.W.2d 43 (1934).

The judgment is reversed with directions that a new judgment be entered consistent with this opinion.

All concur.